William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York  10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KWAME BONSU,                                                    :        ECF
Individually and on Behalf of All Other          :        16 Civ. _____
Persons Similarly Situated,                            :
                                                                      :
                                          Plaintiffs,        :
                                                                      :        **COMPLAINT AND**
            -against-                                          :        **JURY DEMAND**
                                                                      :
RCPI HOLDCO, L.L.C., TISHMAN SPEYER       :
PROPERTIES, INC.,  MICHAEL ULIANO,        :
JESSICA ORTEGA, and JOHN DOES #1-10,      :
                                                                      :
                                          Defendants.     :
-------------------------------------------------------------------X

Plaintiff KWAME BONSU ("Plaintiff"), on behalf of himself individually and as class

representative of other employees similarly situated, by and through his attorney, complains and

alleges for his complaint against RCPI HOLDCO, L.L.C., TISHMAN SPEYER PROPERTIES,

INC., MICHAEL ULIANO, JESSICA ORTEGA and JOHN DOES #1-10 (together "Defendant"

or "Defendants") as follows:

## NATURE OF THE ACTION

1.       Plaintiff KWAME BONSU  ("Plaintiff") was a porter/janitorial employee who

like similar employees was illegally not paid for all his hours worked and not paid time and one

half for his hours worked over forty in a week ("overtime").

2.       Plaintiff worked for Defendants for more than 40 hours per week ("overtime

hours") and, along with numerous other similar home health aides was not paid time and one half

his regular wage rate for his overtime hours.

3.      Plaintiff alleges on behalf of himself and other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid minimum wages and to unpaid overtime wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

4.      Plaintiff further complains on behalf of himself, and a class of other similarly situated current and former employees of the Defendant, pursuant to Fed. R. Civ. P. 23, that they are entitled to back wages from Defendant for (a) hours worked for which they did not receive wages, and (b) hours worked for which they were not paid minimum wages and (c) overtime hours worked for which they did not receive time and one half their actual wages, as required by the New York Labor Law §§ 650 *et seq.* and the supporting New York State Department of Labor regulations.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      Venue is proper in this district pursuant to 28 U.S.C. §1391.

7.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

8.      Plaintiff KWAME BONSU was, at all relevant times, an adult individual, residing in Bronx County in New York State.

9.      Upon information and belief, Defendant RCPI HOLDCO, L.L.C. ("Corporate Defendant") is a Delaware limited liability company, with its principal place of business at 45 Rockefeller Plaza, New York, N.Y. 10111

10.      Upon information and belief, Defendant TISHMAN SPEYER PROPERTIES, INC. ("Corporate Defendant") is a Delaware Corporation, with its principal place of business at 45 Rockefeller Plaza, New York, N.Y. 10111

11.      Upon information and belief, Defendants  MICHAEL ULIANO and JESSICA ORTEGA  ("Individual Defendants") are each an officer, director and/or managing agent of the Corporate Defendant, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and is jointly and severally liable with the Corporate Defendant.

12.      Upon information and belief, during the prior 3 years, the Individual Defendants had authority over the Corporate Defendant's management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' porter/janitorial employees and other employees and their decisions directly affected the nature and condition of such employees' employment.

13.      Upon information and belief, during the prior 3 years, the Individual Defendants each (1) had the power to hire and fire porter/janitorial employees of the Corporate Defendant,

(2) supervised and controlled the porter/janitorial employees' schedules and conditions of employment, (3) determined the rate and method of payment of the porter/janitorial employees, and (4) maintained employment records related to the porter/janitorial employees.

14.     Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of the Corporate Defendant, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

## COLLECTIVE ACTION ALLEGATIONS

15.     Pursuant to 29 U.S.C. §207, Plaintiff seeks to prosecute his FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendant at any time since May 13, 2010 (time tolled by failure to post notice) to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wages and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

16.     Upon information and belief, Defendants did not post a notice indicating that the porter/janitorial employees had a right to minimum wages and/or overtime wages.

17.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon

information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

18.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

19.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

20.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are

a.       whether the Defendants employed the Collective Action members within the meaning of the FLSA;

b.       whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

c.       what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.      whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of 29 C.F.R. § 516.4;

e.      whether Defendants failed to pay the Collective Action Members minimum wages and overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.      whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

g.      whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

h.      whether Defendants should be enjoined from such violations of the FLSA in the future.

21.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

22.     Plaintiff sues on his own behalf and on behalf of a class of persons under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

23.     Plaintiff brings his New York Labor Law claim on behalf of all persons who were employed by Defendant at any time since May 13, 2010 to the entry of judgment in this case (the "Class Period"), who were not paid all their straight time wages, minimum wages, and/or overtime wages and/or were not provided the notices required by the Wage Theft Prevention Act (the "Class").

24.     The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there at least 40 members of Class during the Class Period.

25.     The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

26.     The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

27.     Plaintiff is committed to pursuing his action and has retained competent counsel experienced in employment law and class action litigation.

28.     Plaintiff has the same interests in this matter as all other members of the class and Plaintiff's claims are typical of the Class.

29.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.   whether the Defendants employed the members of the Class within the meaning of the New York Labor Law;

b.   whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and members of the Class;

c.   what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.   whether Defendants failed and/or refused to pay the members of the Class for all hours worked by them as well as premium pay for hours worked in excess of forty hours per workweek within the meaning of the New York Labor Law;

e.   whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, interest, costs and disbursements and attorneys' fees;

f.   whether the Defendants should be enjoined from such violations of the New York Labor Law in the future; and

## STATEMENT OF FACTS

30.   KWAME BONSU ("Plaintiff" or "KWAME") was employed full time as a porter/janitorial employee by RCPI HOLDCO, L.L.C. and Tishman Speyer Properties, Inc. and its officers/managers, including Michael Uliano and Jessica Ortega (together "Defendants") from about September 6, 2015 to November 20, 2015 (the "time period").

31.   Defendants are each a property manager that hired KWAME as a porter/janitorial employee to clean the property and buildings located at Rockefeller Center in New York City.

32.   KWAME was first paid $14.25 per hour for the hours for which he was given credit and then his rate went up to $17.94 per hour on or about November 7, 2015.

33.   KWAME was required to wear a uniform that consisted of a white, long sleeved button down shirt which stated "Tishman Speyer" on the left front.

34.   KWAME was also required to wear black pants which Defendants provided and black shoes which KWAME provided.

35.   KWAME was also given a hat with a "Tishman Speyer" logo which KWAME

was required to wear if KWAME chose to wear a hat.

36.     KWAME and similar employees washed their own uniforms and were not reimbursed for the washing cost.

37.     During the time period, KWAME never worked for Defendants outside of New York City.

38.     During the time period, KWAME worked from 8:00 a.m. to 4:30 p.m. or later Monday through Friday.

39.     During the time period, KWAME generally worked at least 42.5 hours per week, but was only paid for 40 hours per week.

40.     During the time period, KWAME  was allegedly given a break from 10:00 a.m. to 10:15 a.m., from 12:00 p.m. to 12:30 p.m. and from 2:00 p.m. to 2:15 p.m., but KWAME was required to respond to his radio during the breaks and accordingly, was on call or actually working during his breaks.

41.      KWAME worked with more than 30 other porter/janitorial employees who also were on call during breaks and who worked a general schedule of 42.5 hours and were paid for only 40 hours of the 42.5 hours ("Similar Porter Employees").

42.     During the breaks, KWAME and the other Similar Porter Employees were required to be within radio range and thus could not go below 48th Street or above 51th Street and could not go East of Fifth Avenue or West of 6th Avenue, as the radio reception ended beyond those boundaries.

43.     KWAME and similar employees were given a radio to communicate with the foreman and co-workers and were required to respond to the radio at all times even during the alleged lunch break and other breaks during which  KWAME was always on call.

44.     On a regular basis, KWAME and the Similar Porter Employees were called by the foreman during their breaks and told to go clean up garbage which included spilled ice cream, abandoned lunch boxes and newspapers and magazines.  Accordingly, Kwame and the Similar Porter Employees worked during their breaks on a regular basis.

45.     KWAME and the Similar Porter Employees were not paid their regular wages for all of their hours worked and were not paid for all their hours worked over 40 in a week at time and one half their regular wage rate.

46.     During the time period, KWAME started his work shift by checking out the radio at the control room and ended his work shift by checking the radio back in.

47.     Upon information and belief, there is a record kept by Defendants of when and by whom the radios were checked out and checked back in.

48.     The control room was located on the uptown side of 51st Street between Fifth and Sixth Avenue.

49.     KWAME was not told to use the finger scanner to sign in and out of work until about two weeks before KWAME was terminated.

50.     Before KWAME used the hand scanner, KWAME was not instructed to sign in and out of his job and did not sign in or out of his job.

51.     Upon information and belief, porter/janitorial employees who had worked for more than a few months were then told to scan in and out of their jobs using the hand scanner.

52.     Throughout the time period, KWAME and the Similar Porter Employees have worked in excess of 40 hours per week and (a) have not been paid wages for all their regular hours worked, and (b) have not been paid overtime premium wages of one and one half times their regular hourly rate for all hours worked over 40 in a week.

53.     KWAME  received his paystub from a Foreman every Friday at about 11:00 a.m.

54.     KWAME reviewed his paystub on Friday, November 13, 2015 for the period from about October 31, 2015 to November 6, 2015, and saw that he was paid for only 40 hours even though KWAME had worked on the Monday during the pay period until 6:30 p.m., two hours in addition to his regular shift.

55.     On or about 3:00 p.m. on November 13, 2015, with the permission of his Foreman named Ralph, KWAME went to the control room and complained to the Head Foreman named Caesar that KWAME had not been paid for two hours of work.

56.     Caesar confirmed that KWAME had done the extra work and said that he would take KWAME's complaint to Human Resources to get KWAME paid.

57.     When KWAME received his paystub on Friday November 20, 2015, KWAME saw that KWAME still had not been paid for the 2 hours of overtime work that KWAME had performed, so after getting permission from his Forman, Ralph, at about 12:30 p.m., KWAME went to the Human Resources Department and complained to Jessica Ortega, the Human Resources Manager, and she told KWAME to communicate his complaint to Michael Uliano, the Property Manager.

58.     Promptly after complaining to Jessica Ortega, KWAME found Michael Uliano, who happened to be in the Human Resources Office, and told Michael that he had not been paid for 2 hours of overtime work and requested that he be paid.

59.     Michael Uliano said that he would take care of KWAME's complaint and said that KWAME would be paid the unpaid 2 hours of overtime in his next paycheck and KWAME thanked him.

60.     After speaking with Michael Uliano at the Huma Resources Office, KWAME returned to work at about 1:00 p.m.

61.     At about 2:00 p.m. KWAME received a call on his radio from his Foreman named Ralph, who said that KWAME should meet with him immediately.  KWAME met with him promptly thereafter and Ralph told KWAME in person that KWAME was required to meet with Head Foreman Caesar after the end of KWAME's shift.

62.     At the end of KWAME's shift at 4:30 p.m., KWAME returned his radio and then went to speak with Caesar at the Control Room. Caesar told KWAME that KWAME was terminated and to turn in his Identification and Uniform.

63.     KWAME asked Caesar why he was being terminated and Caesar said it was for being outside of the work zone.

64.     KWAME told Caesar that KWAME had not been outside the work zone, and Caesar said to go speak to Michael Uliano.

65.     KWAME turned in his uniform and identification card and tried to find Michael Uliano but he had already left for the day.

66.     KWAME then returned to the job on the following Wednesday, November 25, 2015, to pick up his final paycheck and at that time KWAME found Michael Uliano and asked him why he had been terminated.

67.     Michael Uliano said KWAME was fired because KWAME had been outside the work zone, and KWAME said that the only time KWAME was outside the work zone was when KWAME went to Human Resources to complain to Jessica and to him about the fact that KWAME had not been paid for his 2 overtime hours.   He provided no reasonable explanation as to why KWAME was terminated.

68.     In fact, it is clear that KWAME was terminated in retaliation for his complaining about not receiving the overtime pay to which KWAME was entitled.

## CLAIM I
## FAIR LABOR STANDARDS ACT

69.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

70.     At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

71.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

72.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

73.     Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).  The named Plaintiff's written consent is attached hereto and incorporated by reference.

74.     At all relevant times, the Defendants had a policy and practice of refusing to pay its employees minimum wages and/or overtime wages equal to time and one half their employees' regular wages for hours worked over forty in a work week.

75.     As a result of the Defendants' willful failure to compensate their employees, including Plaintiff and the Collective Action members overtime wages and/or minimum wages for all of their hours worked, the Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

76.     As a result of the Defendants' failure to record, report, credit and/or compensate

their employees, including Plaintiff and the Collective Action members, the Defendants have

failed to make, keep and preserve records with respect to each of their employees sufficient to

determine the wages, hours and other conditions and practices of employment in violation of the

FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

77.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA

within the meaning of 29 U.S.C. § 255(a).

78.     Due to the Defendants' FLSA violations, Plaintiff and the Collective Action Class

are entitled to recover from the Defendants, their unpaid minimum and overtime wages, and an

equal additional amount as liquidated damages, additional liquidated damages for unreasonably

delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of

this action, pursuant to 29 U.S.C. § 216(b).

## CLAIM II
## NEW YORK LABOR LAW

79.     Plaintiff repeats and realleges each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

80.     At all relevant times, Plaintiff and the members of the Class were employed by

the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

81.     Defendants willfully violated Plaintiff's rights, and the rights of the members of

the Class, by failing to pay them wages in violation of the New York Labor Law and its

regulations.

82.     The Defendants' New York Labor Law violations have caused Plaintiff and the

members of the Class, irreparable harm for which there is no adequate remedy at law.

83.     Due to the Defendants' New York Labor Law violations, Plaintiff and the

members of the Class are entitled to recover from Defendants their unpaid wages, unpaid

minimum wages, unpaid overtime wages, reasonable attorneys' fees, and/or costs and

disbursements of the action, pursuant to New York Labor Law §663(1) et seq.

84.     Upon information and belief Defendants did not provide proper notices to

Plaintiff and similar employees of their wage rate and the name of their employer and the time

period during which they would be paid.

85.     Defendants willfully violated the rights of Plaintiff and the members of the Class

by failing to provide them proper notices and wage statements in violation of the New York

Wage Theft Prevention Act, N.Y. Lab. Law § 198(1-a) (enacted on April 9, 2011).

86.     As a result of Defendants' violation of the New York Wage Theft Prevention Act,

Plaintiff and the members of the Class are each entitled to damages of at least $150 per week

during which the violations occurred.

<u>THIRD CLAIM FOR RELIEF</u>
<u>(FLSA - Discrimination and Retaliation)</u>

87.     Plaintiff repeats and realleges each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

88.     By terminating Plaintiff, Defendants violated the FLSA, 29 U.S.C. §201 et seq.

Section 215 (a) (3) specifically states:

It shall be unlawful for any person—

(3) to discharge or in any other manner discriminate against any employee
because such employee has filed any complaint or instituted or caused to be
instituted any proceeding under or related to this Act [29 USCS §§ 201 et seq.,
generally; for full classification, consult USCS Tables volumes], or has testified
or is about to testify in any such proceeding, or has served or is about to serve on
an industry committee.

89.     Due to Defendants' illegal termination of Plaintiff, Plaintiff seeks and is entitled

to recover from Defendants her unpaid wages, unpaid overtime compensation, damages for unreasonably delayed payment of wages, back pay, front pay, rehiring and/or reinstatement to her former position, and reasonable attorneys' fees, and costs and disbursements of the action.

### FOURTH CAUSE OF ACTION
### (New York Labor Law - Discrimination and Retaliation)

90.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     By terminating Plaintiff, Defendants violated New York Labor Law § 215.

92.     New York Labor Law § 215 states:

§ 215.  Penalties and civil action; [fig 1] prohibited retaliation

1. (a) No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has [fig 1] engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner (ii) because such employer or person believes that such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general, or to any other person that the employer has violated any provision of this chapter, or any order issued by the commissioner (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter, or [fig 2] (iv) because such employee has provided information to the commissioner or his or her authorized representative or the attorney general, or [fig 3] (v) because such employee has testified or is about to testify in an investigation or proceeding under this chapter, or [fig 4] (vi) because such employee has otherwise exercised rights protected under this chapter, or [fig 5] (vii) because the employer has received an adverse determination from the commissioner involving the employee.
    An employee complaint or other communication need not make explicit reference to any section or provision of this chapter to trigger the protections of this section.

******              ******              ******
2. (a) An employee may bring a civil action in a court of competent jurisdiction

against any employer or persons alleged to have violated the provisions of this section. The court shall have jurisdiction to restrain violations of this section, within two years after such violation, regardless of the dates of employment of the employee, and to order all appropriate relief, including enjoining the conduct of any person or employer; ordering payment of liquidated damages, costs and reasonable attorneys' fees to the employee by the person or entity in violation; and, where the person or entity in violation is an employer, ordering rehiring or reinstatement of the employee to his or her former position with restoration of seniority or an award of front pay in lieu of reinstatement, [fig 1] and an award of lost compensation [fig 2] and damages, costs and reasonable attorneys' fees. Liquidated damages shall be calculated as an amount not more than ten thousand dollars. The court shall award liquidated damages to every employee aggrieved under this section, in addition to any other remedies permitted by this section. The statute of limitations shall be tolled from the date an employee files a complaint with the commissioner or the commissioner commences an investigation, whichever is earlier, until an order to comply issued by the commissioner becomes final, or where the commissioner does not issue an order, until the date on which the commissioner notifies the complainant that the investigation has concluded. Investigation by the commissioner shall not be a prerequisite to nor a bar against a person bringing a civil action under this section.

3. Any employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person who violates subdivision one of this section shall be guilty of a class B misdemeanor.

93.     Prior to the commencement of this claim, on May 13, 2016, Plaintiff served a copy of this Complaint upon the Attorney General of New York State.

94.     Due to Defendants' illegal termination of Plaintiff, Plaintiff seeks and is entitled to recover from Defendants her unpaid wages, damages for unreasonably delayed payment of wages, back pay, front pay, rehiring and/or reinstatement to her former position, and reasonable attorneys' fees, costs and disbursements of the action, and liquidated/punitive damages, pursuant to New York Labor Law § 663(1).

## FIFTH CAUSE OF ACTION
### (Breach of Contract)

95.     Plaintiff repeats and realleges each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

96.     Plaintiff and members of the Class entered into employment contracts with Defendants.

97.     Plaintiff and members of the Class fully performed all their obligations under the employment contracts.

98.     Defendants breached the employment contracts by failing to pay wages required to be paid by the contracts to the Plaintiff and members of the Class.

99.     Defendants' breach has caused Plaintiff and members of the Class to suffer damages.

100.     As a result of Defendants' breach of the employment agreements Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and all other similarly situated Collective Action Members and members of the Class, respectfully requests that this Court grant the following relief:

a.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1), (2) and (3) on behalf of the members of the Class and appointing Plaintiff and his counsel to represent the Class;

b.  Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and

appointing Plaintiff and his counsel to represent the Collective Action members;

c.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

d.  An order tolling the statute of limitations;

e.  An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of costs related to uniform cleaning and cost;

g.  An award of lost compensation resulting from Plaintiff's illegal termination;

h.  An award of unpaid wages, overtime wages and minimum wages due under, among others, the FLSA, the New York Labor Law, New York Wage Theft Prevention Act, and the New York common law;

i.  An award of liquidated and/or punitive damages, as a result of the Defendants' willful failure to pay wages, minimum wages, and/or overtime wages pursuant to 29 U.S.C. § 216 and the New York Labor Law and the New York common law;

j.  An award of prejudgment and postjudgment interest;

k.  An award of costs and expenses of this action together with reasonable attorney's and expert fees;

l.  Such other and further relief as this Court deems just and proper.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
        May 13, 2016

                        LAW OFFICE OF WILLIAM COUDERT RAND

                        _____
                        William Coudert Rand, Esq.
                        *Attorney for Plaintiff*, Individually and on
                        Behalf of All Persons Similarly Situated
                        501Fifth Ave., 15th Floor
                        New York, New York 10017
                        Tel: (212) 286-1425
                        Fax: (646) 688-3078
                        Email: wcrand@wcrand.com

CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of _Tishman Speyer Properties, Inc. Mike_ _RCPI Holding Co., Inc. LLC et al. Jessica Ortega Viliano_ to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____ _____   _Kwame Bonsu_____
Signature               Date      Print Name

8